# Exhibit A

## PATENT LICENSE AGREEMENT

This Patent License Agreement (the "Agreement") is entered into by and between FreeMotion Fitness, Inc. ("Licensee"), a Utah corporation having a place of business of 1096 Elkton Drive, Suite 600, Colorado Springs, Colorado 80907, and Robert E. Rodgers, Jr. ("Licensor"), an individual that maintains an address at 974 King Point Drive, Canyon Lake, Texas 78133. The effective date of this Agreement is June 1, 2004 (the "Effective Date").

## AGREED BACKGROUND FACTS

**A.**     Licensor is the owner of certain patents listed in **Schedule A** of this Agreement (the "Licensor Patents"). Licensor is also the owner of certain patent applications listed in **Schedule B** of this Agreement (the "Licensor Patent Applications").

**B.**     Licensee sells certain products in the exercise industry.

**C.**     Licensee desires to receive from Licensor a non-exclusive royalty-bearing license to the Licensor Patents and Licensor Patent Applications for its products, and Licensor is willing to provide such non-exclusive royalty-bearing license to Licensee pursuant to the terms and conditions of this Agreement.

**D.**     In entering into this Agreement, it is of particular importance to Licensor that (1) its rights in and to the Licensor Patents and Licensor Patent Applications be recognized and acknowledged by Licensee, (2) Licensee accurately and timely accounts to Licensor for payments, and (3) Licensor not be subject to any liability arising from or related to any of Licensee's materials (e.g., advertising or product instruction materials), equipment, or products.

ACCORDINGLY, in consideration of the mutual agreements stated in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Licensor and Licensee agree as follows:

## AGREEMENT

## SECTION I. DEFINITIONS

**1.1**     "Patent Rights" mean Licensor's intangible legal rights or interests that exist now or in the future in the Licensor Patents listed in Schedule A, including any reexaminations, reissues and extensions of same, and Licensor Patent Applications listed in Schedule B, including any continuations, continued prosecution applications, continations-in-part, divisionals, and extensions of same. Except as is specifically set forth herein, the Patent Rights shall not include any patents, patent applications, or other intellectual property rights of Licensor which are not listed in Schedule A or Schedule B of this Agreement.

1

**1.2**    "Tax" means any tax, levy, impost, deduction, charge, rate, duty, compulsory loan or withholding which is levied or imposed by a governmental agency, together with interest, penalties, charges, fees or other amounts (if any) imposed or made on or in respect of the above.

**1.3**    "Term" means the term of this Agreement as provided for in Section 4.1.

**1.4**    "Territory" means the United States, Canada, China, EPO (Great Britain, Germany and Italy), Hong Kong, Japan, and Mexico, and all of their respective territories and possessions.

**1.5**    "Products" means any apparatus, systems or products covered by at least one Claim of any of Licensor's Patent Rights, and any apparatus, systems, or products that, when made, imported, sold, offered for sale, and/or used, would (a) actively induce infringement of at least one Claim in Licensor's Patent Rights, or (b) cause contributory infringement of at least one Claim in Licensor's Patent Rights.   The parties also agree that Licensee's products identified in **Schedule C** are "Products" as defined herein.

**1.6**    "Licensee" means FreeMotion Fitness, Inc. and no other person or entity.

**1.7**    "Field of Use" means and includes Products having a Licensee invoice price equal to or greater than two thousand U.S. dollars ($2,000), or an equivalent amount in foreign currency.

**1.8**    "Claim" or "Claims" means and includes the issued claims of the Patent Rights, excluding any claim of the Patent Rights that is declared invalid or unenforceable by a court of competent jurisdiction in a final order from which (i) no appeal can be taken or (ii) the time for filing an appeal has expired.

## SECTION II.   LICENSE

**2.1**    <u>Grant</u>.   Subject to the terms and conditions of this Agreement, Licensor hereby grants Licensee, during the Term of this Agreement and in the Territory, but only in the limited Field of Use, a nonexclusive, royalty-bearing license to make, have made for it, import, use, sell, and offer to sell its Products.

**2.2**    <u>Licensee Efforts</u>.   Licensee shall use commercially reasonable efforts to promote the manufacture and sale of the Products.

**2.3**    <u>Additional Patents</u>.   Attached in Schedule C hereto are schematics of a Licensee product hereinafter referred to as the "FreeMotion Institutional Elliptical." The parties agree that Licensee is, pursuant to this Agreement, licensed by Licensor to make, have made for it, use, import, sell, and offer to sell the FreeMotion Institutional Elliptical in the Field of Use in the Territory. If, and to the extent, additional patents issue to Licensor, and/or additional patent applications are filed by

Licensor in the future, that cover the Freemotion Institutional Elliptical, then the parties agree that Licensee will continue to have the license to make, use, import, sell, and offer to sell the FreeMotion Institutional Elliptical in the Field of Use and in the Territory pursuant to this Agreement, and Licensor hereby provides Licensee with a license under such additional patents and patent applications for License to do so.

**2.4**  Reservation.  All rights not explicitly granted to Licensee in this Agreement are expressly reserved to Licensor.  Except as expressly provided in this Agreement, no other rights or licenses are intended or conveyed herein, whether by implication, estoppel, or otherwise.

## SECTION III.  PAYMENTS/ROYALTIES

**3.1**  Royalties.  During the Term of this Agreement, in consideration of the Patent Rights licensed to Licensee under this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, for all Products that are either made, have made, used, sold, offered for sale, or imported in the Field of Use in the Territory, Licensee shall pay Licensor a royalty of six percent (6%) of the gross sales of such Products by Licensee (the "Royalty").  For the purposes of this Section, "gross sales" shall mean the total amounts of cash, credits, allowances, discounts, items or services of financial value, or other income received by Licensee for the transfer of title, lease, or rental of any quantity of Products, less any freight costs and trade discounts actually incurred, paid, or applied for such Products (provided that such freight costs and trade discounts are amounts ordinary and reasonable in the exercise industry).  Licensee shall receive a credit for any Royalties actually paid to Licensor for any Products returned to Licensee for a full refund.  Nothing herein shall require Licensee to pay a Royalty based on loan or placement of Products for purposes of tests or trials, provided that such loan or placement is free of charge (except for direct, out-of-pocket expenses and similar reimbursement) to the party conducting such tests or trials, however, lease or rental payments, or any consideration, received by Licensee for Products shall be considered "gross sales."  In the event that Licensee makes a gross sale that is not at arm's length, such gross sale shall be valued by the parties for the Royalty provided herein at an amount that Licensee has sold such Products to a third party at arm's length.  For purposes of this Section, a sale that is not "arm's length" is any sale by Licensee to a third party in which Products are sold under market value and such third party and Licensee do not negotiate such sale in a competitive manner (*e.g.*, Licensee sells Products to an affiliated or related company at a price lower than market value, Licensee sells Products to a third party at a price lower than market value in order to decrease Licensor's Royalty payments, Licensee sells the Products to a third party at a price lower than market value in order to sell other products of Licensee to the third party, etc.).  For purposes of this Section, if any Products are rented or leased by Licensee, then the ordinary sales price of such Products shall be used to calculate "gross sales" for such Products, and the Royalty for such "gross sales" shall accrue and be payable to Licensor when the Products are shipped to the renter/lessee for such Products.

**3.2**    Minimum Royalty.  The minimum Royalty owed by Licensee to Licensor shall be Twenty-Five Thousand and 00/100ths Dollars ($25,000.00) for each calendar year in which some or all of such calendar year is also during the Term of this Agreement (the "Minimum Royalty").  In the event that Licensee has not paid Licensor the Minimum Royalty, Licensee shall pay to Licensor the difference between the amount of the Royalty paid to Licensor by Licensee for such calendar year, and the Minimum Royalty. · Such Minimum Royalty shall be calculated on the Royalty report that immediately follows the October-December quarter of each such calendar year, and such Minimum Royalty shall accompany such Royalty report.

**3.3**    Amount of Royalty/Single Royalty.  The parties understand and acknowledge that the coverage of Licensor's Patent Rights may vary in different countries in the Territory (for example, in some countries more patent claims may cover a Licensee product, as compared to other countries).  In order to ease and simplify Licensee's administration in paying the Royalty to Licensor, Licensor has agreed to receive a flat rate Royalty for the sale of Products in all countries in the Territory instead of receiving different Royalty rates depending on the amount of coverage of Patent Rights in a particular country.  Nothing herein shall be construed to require the payment of more than a single Royalty per single unit of Product sold by Licensee, regardless of the number or type of claims that cover such product, and regardless of the respective occurrence of manufacture, importation, exportation, use, or sale.

**3.4**    Time of Payments; Royalty Reports.  The Royalty payments outlined in Section 3.1 shall be payable to Licensor in United States Dollars within sixty (60) days of the calendar quarter in which sales were made by Licensee.  All payments shall be made to such address as Licensor may from time-to-time designate.  The Royalty payments shall be accompanied by a Royalty report that states:  (a) the quantity of Products sold by Licensee, including an identification of each Product type and serial number, and including any credits or offsets claimed by Licensee (b) the date of sale of the Products, and (c) the amount of the sale and the total Royalty due Licensor.  Licensee shall sequentially number all serial numbers for all Product types sold during the Term of this Agreement.

**3.5**    Past Due Payments.  If any amount due under this Agreement is not paid by Licensee when due, Licensee shall immediately notify Licensor of the reason for the delinquency and such unpaid amounts shall bear interest at the greater of (a) the maximum rate permitted by law, or (b) the rate of one and a half percent (1½%) per month (or part thereof as the case may be) from the date when due until the date of payment.

**3.6**   Records and Audits.  Licensee will keep or cause to be kept, in accordance with good accounting practice, books, records and accounts covering its operations that contain all information necessary for the accurate determination of Royalty payments payable under this Agreement, including, but not limited to, the name and address of the purchaser of the Products.  Licensee agrees to permit Licensor or representatives of Licensor to audit during regular business hours such books, records and accounts and all or any part of Licensee's operations and activities as may be necessary to determine the completeness and accuracy of payments required to be made under this Agreement (collectively, "Audit Materials").  Licensor shall provide Licensee with two (2) weeks prior notice before any audit.  No more than one (1) audit shall be permitted each calendar year. Licensor shall be entitled to make copies and extracts from the Audit Materials of Licensee.  In the event of an audit, Licensor shall not, except with the written consent of Licensee, disclose the Audit Materials of Licensee that are identified by Licensee as confidential except to its employees and representatives who have a need to know for purposes of this Agreement.  If Licensor is required to disclose Licensee's confidential Audit Materials pursuant to court order or government authority, then Licensor shall provide reasonable notice where feasible to Licensee prior to such disclosure and shall cooperate with Licensee to obtain protection from such disclosure.  Licensee's confidential Audit Materials shall not be considered confidential if such Audit Materials (a) were, as of the time of their disclosure or thereafter, part of the public domain through a source other than Licensor; (b) were known to Licensor as of the time of their disclosure; (c) were independently discovered by Licensor without use of or reference to Licensee's confidential Audit Materials; or (d) were subsequently learned from a third party not under a confidentiality obligation to Licensor.  If, upon inspection of Licensee's Audit Materials, it is determined that Licensee's accounting of payments due under this Agreement was deficient in excess of five percent (5%) of the amount actually due, then Licensee shall reimburse Licensor for the cost of Licensor's audit (including translation costs, attorneys' fees, accountant's fees, and other costs), and shall immediately pay over the amount due with interest as a past due payment.

**3.7**   Taxes.  All payments to Licensor shall be net of any Tax due by Licensee.  If Licensor becomes liable for any Tax with respect to any payment made under this Agreement in circumstances where Licensee was obliged to pay or make a deduction in respect of such Tax but failed to do so, then Licensee shall indemnify Licensor on demand against any such Tax.

## SECTION IV.  TERM OF AGREEMENT; DEFAULT; TERMINATION

**4.1**   Term.  Unless sooner terminated in accordance with its terms, the Term of this Agreement shall commence on the Effective Date and continue in effect until expiration of the term for the last to expire of the patents listed in Schedule A and Schedule B (provided that the patent applications listed in Schedule B become patents) of this Agreement.

**4.2**   Default; Cure.  If a party is in default of any obligations under this Agreement, the other party may give written notice of such default to that party.  After notice is provided, the party alleged to be in default shall have ten (10) days to cure defaults arising from any failure to make any Royalty payment pursuant to this Agreement, and sixty (60) days in which to cure other such defaults.

If such default is not cured within the applicable ten (10) days or sixty (60) days after the date of such notice, then the other party shall have the option to terminate this Agreement after providing notice of such termination to the party alleged to be in default.

**4.3**   Termination.  After June 1, 2006, either party may terminate this Agreement at any time, with or without cause, by providing at least ninety (90) days prior written notice of termination to the other party.

**4.4**   Bankruptcy; Insolvency.  This Agreement may be terminated by a party if the other party is at any time placed in bankruptcy, if it goes into voluntary dissolution, if it has a receiver appointed, if a levy of execution directly involves all of the substantial assets of it, or if it makes any general assignment for the benefit of creditors.

**4.5**   Termination of Licenses.  Upon termination of this Agreement all license grants from Licensor to Licensee shall immediately cease, and Licensee shall immediately cease using, importing, making, having made, offering for sale, and selling Products.  Notwithstanding the foregoing, subject to the other provisions of this Agreement (including Section III), upon termination of this Agreement, Licensee shall have six (6) months in which to fulfill all existing contractual obligations involving or relating to the Products and sell all inventory existing at the date of termination of this Agreement (the "Post-Termination Sale").

**4.6**   Releases; Survival of Certain Obligations.  Any termination of this Agreement shall not (a) release either party from any claim of the other incurred prior to the completion of the Post-Termination Sale; (b) affect in any way any rights and immunities made available prior to the completion of the Post-Termination Sale; or (c) release Licensee from its obligations to pay Royalties or Minimum Royalties.

**4.7**   Certification.  Upon expiration of the Post Termination Sale, Licensee shall certify to Licensor in writing that Licensee no longer is making, using, offering for sale, importing, or selling Products.

**4.8**   Expiration of the Agreement.  Expiration of this Agreement has the same effect as a termination of this Agreement.

**4.9**   Retention of Payments.   Upon expiration or termination of this Agreement for whatever reason, Licensor shall be entitled to retain all Royalty payments or other payments paid by Licensee under this Agreement, and any remaining Royalty payments, Minimum Royalties, or other payments for the Term of this Agreement shall be due and payable immediately.

## SECTION V.  THE LICENSOR PATENTS

**5.1**   Licensor Ownership of the Patent Rights.  Subject to existing nonexclusive licenses previously granted by Licensor, Licensor represents and warrants that (a) Licensor holds title to, and is the

exclusive owner of, the Patent Rights, and (b) Licensor has the right to grant the licenses set forth in this Agreement.

**5.2**    Licensor's Patent Rights.  Licensee agrees that the Licensor Patents and the patents that will mature from the Licensor Patent Applications are valid and enforceable.  Licensee shall not voluntarily do, or assist any other person or entity to do, anything that would contest or in any way impair (i) the rights of Licensor in any of the Licensor Patents or the Licensor Patent Applications, (ii) the enforceability and/or validity of any of the Licensor Patents or the Licensor Patent Applications, or (iii) any cause of action that Licensor may have concerning infringement of any of the Licensor Patents or the Licensor Patent Applications.   The provisions of this Section shall survive any termination or expiration of this Agreement.

**5.3**    Patent Markings.  Licensee will apply markings to all of its Products (or the packaging for such Products) that indicate Licensor's Patent Rights cover such Products (the parties agree that one marking applied to each such Product, or Product packaging, sold by Licensee is sufficient to meet the requirements of this Section).   Such markings shall initially state: "Covered by one or more of the following patent rights: U.S. Patent Nos. 5,540,637, 5,573,480, 5,593,372, 5,683,333, 5,766,113, 5,813,949, 5,924,962 and 5,938,567."  Such markings may change from time to time at Licensor's discretion (e.g., if a patent issues, the markings will change to reflect same) and, within ten (10) days after Licensor notifies Licensee of the changed marking, then Licensee shall then use the changed marking.  If Licensee for any reason does not apply these markings to any Products at or prior to the sale of the Products by Licensee, then Licensee has breached this Agreement and such Product is not licensed pursuant to this Agreement.

## SECTION VI.  LIMITATIONS OF LIABILITY

**6.1**    Assumption of Risk.  As between the parties, Licensee assumes full responsibility for all risk and liability in relation to the Products and all loss of or damage to property or injury to persons related to the Products including, but not limited to, death arising out of Licensee's manufacture and sale of Products.  Licensee shall indemnify, defend and hold Licensor harmless from and against any and all claims, costs (including court costs, expert fees, and attorneys' fees), proceedings and liabilities, whatsoever, for and arising out of any such loss, damage, injury, or death related to the Products.

**6.2**    Disclaimer of Warranties.  EXCEPT AS IS OTHERWISE SPECIFICALLY SET FORTH HEREIN, THE PATENT RIGHTS ARE LICENSED TO LICENSEE "AS IS" AND "WITH ALL FAULTS." LICENSOR MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED (EITHER IN FACT OR BY OPERATION OF LAW) WITH RESPECT TO THE PATENT RIGHTS.  LICENSOR EXPRESSLY DISCLAIMS ALL WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ALL WARRANTIES ARISING FROM CONDUCT, COURSE OF DEALING OR CUSTOM OF TRADE, AND ALL WARRANTIES OF NON-INFRINGEMENT. MOREOVER, LICENSOR DOES NOT WARRANT THE VALIDITY AND ENFORCEABILITY

OF ANY OF LICENSOR'S PATENT RIGHTS OR THAT THE EXPLOITATION OF ANY ASPECT OF THE PRODUCTS WILL NOT CONSTITUTE AN INFRINGEMENT OF THE CLAIMS OF A PATENT, TRADEMARK, COPYRIGHT, OR OTHER LEGAL RIGHT OWNED BY A THIRD PARTY.  LICENSEE ACKNOWLEDGES (A) THAT LICENSOR IS NOT AN INSURER, (B) THAT LICENSEE HAS NOT RELIED ON ANY REPRESENTATIONS OR WARRANTIES; AND (C) THAT LICENSEE HAS READ AND UNDERSTANDS SECTION 6.3, WHICH SETS FORTH LICENSOR'S MAXIMUM LIABILITY IN THE EVENT OF LOSS OR DAMAGE TO LICENSEE OR ANY THIRD PARTY.

    **6.3**   <u>Disclaimer of Liability; Limitation of Liability</u>.  LICENSOR DISCLAIMS AND SHALL NOT BE LIABLE FOR ANY LOST PROFITS, LOST REVENUES, LOSSES OR DAMAGES, WHETHER DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY ARISING OUT OF THE PATENT RIGHTS OR THE PRODUCTS, EVEN IF LICENSOR HAS BEEN ADVISED AS THE LIKELIHOOD OF SUCH LOSS OR DAMAGE. IF, DESPITE ANY OF THE OTHER PROVISIONS OF THIS AGREEMENT, THERE SHALL BE ANY LIABILITY OF LICENSOR TO LICENSEE OR ANY OTHER THIRD PARTY THAT ARISES OUT OF OR IS IN ANY WAY CONNECTED TO THIS AGREEMENT (INCLUDING, BUT NOT LIMITED TO, THE PATENT RIGHTS OR PRODUCTS), LICENSOR'S AGGREGATE LIABILITY FOR ALL DAMAGES, LOSSES AND CAUSES OF ACTION WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EITHER JOINTLY OR SEVERALLY, SHALL NOT EXCEED ONE-HALF OF THE AGGREGATE AMOUNT OF ROYALTIES PAID BY LICENSEE TO LICENSOR UNDER THIS AGREEMENT. LICENSEE ACKNOWLEDGES THAT THE ROYALTY PAYMENTS MADE BY LICENSEE HEREUNDER ARE BASED SOLELY ON THE VALUE OF THE PATENT RIGHTS AND ARE NOT SUFFICIENT TO WARRANT LICENSOR ASSUMING ANY RISK OF CONSEQUENTIAL OR OTHER DAMAGES TO LICENSEE. DUE TO THE NATURE OF THE PATENT RIGHTS LICENSED BY LICENSOR TO LICENSEE HEREUNDER, IT IS IMPRACTICABLE AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY RESULT (PROXIMATELY OR OTHERWISE) UNDER THIS AGREEMENT.   THIS LIMITATION OF LIABILITY REFLECTS AN ALLOCATION OF RISK BETWEEN THE PARTIES IN VIEW OF THE ROYALTIES PAID, IS NOT A PENALTY, AND SHALL BE EXCLUSIVE. THE LIMITATIONS IN THIS AGREEMENT SHALL APPLY DESPITE ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED WARRANTY OR REMEDY.

## SECTION VII. DISPUTES

    **7.1**   <u>Litigation Against Third Parties</u>.  In the event that Licensor is contemplating or is involved in litigation with any third party related to the Patent Rights, then Licensee shall not make or sell, either directly or indirectly, Products for such third party, without prior written consent of Licensor (such consent shall not be unreasonably withheld). Licensee, upon request, shall provide to Licensor reasonable non-monetary assistance during any litigations or proceedings regarding the Patent Rights and shall execute, acknowledge, and deliver to the Licensor all instruments that it may reasonably request. Licensor, as owner of the Patent Rights, shall take such actions that are, in Licensor's sole opinion, commercially reasonable under the circumstances to address (e.g.,

license, etc.) any significant third party infringement of the Patent Rights in the U.S., however Licensor shall have no obligation to file any suit. If any such suit involving the Patent Rights is filed, then Licensor shall have the entire responsibility and authority for the conduct of any such suit, Licensor shall bear the costs of such suit, and any proceeds therefrom shall belong exclusively to Licensor. At Licensor's sole discretion, Licensor may provide consent in writing for Licensee to pursue legal action against a third party infringer, and if such written consent is provided, then Licensee shall have the option but not the obligation to prosecute the case at its own expense.. Prior to any such written consent being provided, the parties shall mutually agree, in writing, as to how the proceeds of such legal action, if any, will be distributed between Licensor and Licensee. In such suit Licensor shall, at Licensee's expense, provide reasonable nonmonetary assistance to Licensee, including being named and participating as the plaintiff in the lawsuit. Notwithstanding the foregoing, if, at any time during the Term of this Agreement, Licensor or Licensee (in the event that Licensor has explicitly granted Licensee the right to enforce the Patent Rights) is unable to uphold the validity of any of the Patent Rights against any alleged infringer, Licensee shall not have a damage claim or a claim for refund or reimbursement against Licensor.

## SECTION VIII. MISCELLANEOUS

**8.1** <u>Assignment and Transfers</u>. This Agreement is freely assignable by Licensor (in whole or in part). Licensee may assign this Agreement in connection with any sale, merger or other business combination involving all or substantially all of Licensee's assets. Except as set forth in the preceding sentence, this Agreement is not assignable by Licensee except with the approval of Licensor (which approval shall not be unreasonably withheld). Except as expressly provided in this Section 8.1, Licensee cannot transfer or sublicense any of the rights set forth herein without Licensor's prior written consent.

**8.2** <u>Notices</u>. Any and all notices to be given under this Agreement by either party to the other may be effected by personal delivery in writing, by facsimile, or by mail, registered or certified, postage prepaid with return receipt requested. Notices shall be sent to the parties at their respective addresses set forth on the first page of this Agreement; provided, however, that each party may change its address by written notice to the other party in accordance with this section. Notices delivered personally or by facsimile shall be deemed given as of actual receipt, and mailed notices shall be deemed given as of three (3) days after mailing.

**8.3** <u>Attorneys' Fees; Injunctive Relief</u>. In the event of a breach of this Agreement by either Licensor or Licensee resulting in damages to the other party, that party may recover from the party breaching the Agreement any and all damages that may be sustained. If any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, experts' fees, costs and necessary disbursements in addition to any other relief, such as injunctive relief, to which that party may be entitled.

**8.4**     Severability.  If any provision of this Agreement shall be held to be illegal, invalid, or unenforceable by a court of competent jurisdiction, that provision shall be deleted and the remainder of this Agreement shall remain in full force and effect.  If any one or more of the provisions contained in this Agreement shall, for any reason, be held to be excessively broad as to duration, geographical scope, activity, or subject, then it shall be construed by limiting and reducing it so as to be enforceable to the extent compatible with the applicable law as it then appears.

**8.5**     Waiver; Remedies Cumulative.  Waiver of any breach of this Agreement by either party shall be ineffective unless in writing signed by the party waiving compliance and shall not be considered a waiver of any other breach.  All remedies provided for in this Agreement shall be cumulative and in addition to, and not in lieu of, any other remedies available to either party at law, in equity or otherwise.

**8.6**     Entire Agreement.  This Agreement constitutes the complete and exclusive statement of the agreement between the parties.  All previous representations and agreements, whether oral or written, regarding the subject matter of the Agreement are merged in this Agreement.  This Agreement may be modified only by a writing signed by the parties.

**8.7**     No Agency.  The parties are independent contractors and nothing in this Agreement shall be construed to create an agency, joint venture, partnership, or other form of business association between the parties.

**8.8**     Choice of Law; Jurisdiction; Venue.   The parties agree to the validity and interpretation of this Agreement and the legal relationship of the parties shall be governed by the laws of the state of Texas, U.S.A., without regard to conflicts of law principles.  Jurisdiction and venue for resolution of all disputes between the parties shall be in the courts located in Travis or Bexar County, Texas, U.S.A.

**8.9**     Force Majeure.  Neither party hereto shall be liable for failures and delays in performance due to strikes, lockouts, fires, acts of God or the public enemy, riots, incendiaries, interference by civil or military authorities, compliance with the laws of various states/countries, or with the orders of any governmental authorities, delays in transit or delivery on the part of transportation companies, failures of communication facilities, or any failure of sources of material.

**8.10**     Headings/Preparation of Agreement.  The headings in this Agreement are for purposes of reference only and shall not be construed a part of this Agreement.  The parties hereto acknowledge that they have both participated in the preparation of this Agreement and, in the event that any question arises regarding its interpretation, no presumption shall be drawn in favor of or against any party hereto with respect to the drafting hereof.

**8.11**     No Bias.  This Agreement shall be interpreted as written and negotiated jointly by the parties.  It shall not be strictly construed against either party, regardless of the actual drafter of the Agreement.

IN WITNESS HEREOF, the parties have respectfully caused this Agreement to be executed by their duly authorized representative on the dates hereinafter indicated.

**LICENSEE:**

By: ~~Patrick J. Hald~~

Name: ~~Patrick J. Hald~~

Title: ~~President COO Freemotor Forces~~

Date: ~~6-8-09~~

STATE OF *Colorado* §
§
COUNTY OF *El Paso* §

BEFORE ME, the undersigned authority, on this 8th day of June , 2009 personally appeared Patrick J. Hald , known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity stated, and as the act and deed of said corporation.

Notary Public

My Commission Expires: 7-20-2007

11

LICENSOR:

By: _Robert E. Rodgers Jr._

Name: _Robert E. Rodgers, Jr._

Date: _6/10/04_

STATE OF _TeXAS_ §
§
COUNTY OF _Travis_ §

BEFORE ME, the undersigned authority, on this _10th_ day of _June_ , 2004 personally appeared _Robert Rodgers_ known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed

```
 _____
 B. GAIL BALLARD
 Notary Public
 STATE OF TEXAS
 My Comm. Exp. 05-06-2006
```

_B. Gail Ballard_
Notary Public

My Commission Expires: _May 6, 2006_

## SCHEDULE A: LICENSOR PATENTS
### U.S. Patents

| Patent No. | Issue Date | Title |
|---|---|---|
| 5,540,637 | 30-Jul-1996 | Stationary Exercise Apparatus having a Preferred Foot Platform Orientation |
| 5,573,480 | 12-Nov-1996 | Stationary Exercise Apparatus |
| 5,593,372 | 14-Jan-1997 | Stationary Exercise Apparatus having a Preferred Foot Platform Path |
| 5,683,333 | 4-Nov-1997 | Stationary Exercise Apparatus |
| 5,766,113 | 16-Jul-1998 | Stationary Exercise Apparatus having a Preferred Foot Platform Path |
| 5,813,949 | 29-Sep-1998 | Stationary Exercise Apparatus having a Preferred Foot Platform Orientation |
| 5,942,962 | 20-Jul-1999 | Stationary Exercise Apparatus |
| 5,938,567 | 17-Aug-1999 | Stationary Exercise Apparatus |

### Foreign Patents

| Country | Patent No. | Issue Date | Title |
|---|---|---|---|
| Japan | 3038242 | | |

13

## SCHEDULE B: LICENSOR PATENT APPLICATIONS

| Country | App. No. | Filing Date | Title |
|---------|----------|-------------|-------|
| Canada | 2,211,127 | | |
| China | 961926902 | | |
| EPO | 96905240.6 | | |
| Hong Kong | 991024798 | | |

14

## SCHEDULE C:  PRODUCTS

1. FreeMotion Institutional Elliptical



SCHEDULE C
5/24/04





SCHEDULE C
5/24/04

# FIRST AMENDMENT
## TO
## PATENT LICENSE AGREEMENT

This First Amendment ("Amendment") is made between FreeMotion Fitness, Inc. ("Licensee"), a Utah corporation having a place of business at 1096 Elkton Drive, Suite 600, Colorado Springs, Colorado 80907, and Robert E. Rodgers, Jr. ("Licensor"), an individual that maintains an address at 974 King Point Drive, Canyon Lake, Texas 78133, and hereby amends the Patent License Agreement between Licensor and Licensee effective June 1, 2004 ("Agreement"). This Amendment is effective as of July 1, 2005 ("Amendment Effective Date").

## RECITALS:

A.   Licensor and Licensee have entered into the Agreement, under which Licensor granted Licensee a non-exclusive, royalty-bearing license under certain of Licensor's patents.

B.   Licensee desires to amend the Agreement to reduce the royalty rate for sales of products sold on or after July 1, 2005.

C.   Licensor is willing to agree to such a reduction, subject to all the terms and conditions of this Amendment and the Agreement.

**NOW, THEREFORE,** the parties agree as follows:

1. *Definitions.* All capitalized terms in this Amendment have the same meaning as set forth in the Agreement, unless defined herein.

2. *Field of Use.* Section 1.7 of the Agreement is replaced with the following:

> "Field of Use" means and includes Products having a Licensee invoice price equal to or greater than five-hundred U.S. dollars ($500), or an equivalent amount in foreign currency, that are sold under one of the following brands: FreeMotion, Epic, or NordicTrack.

3. *Royalties.* The first sentence of Section 3.1 ("Royalties") of the Agreement is replaced with the following:

> During the Term of this Agreement, in consideration of the Patent Rights licensed to Licensee under this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, for all Products that are either made, have made, used, sold, offered for sale, or imported in the Field of Use in the Territory, Licensee shall pay Licensor: (i) for all sales or other dispositions of Products occurring before July 1, 2005, a royalty of six percent (6%) of the gross sales of such Products by Licensee; and (ii) for all sales or other dispositions or Products occurring on or after July 1, 2005, a royalty of four percent (4%) of the gross sales of such Products by Licensee (collectively, items (i) and (ii) are referred to herein as the "Royalty"), provided that if, after July 1, 2005, Licensee fails to timely send quarterly reports and payments in accordance

with Section 3.4, the Royalty for all sales occurring after such failure shall revert to six percent (6%) of the gross sales of such Products for the remainder of the Term.

4. *Minimum Royalty.*   The first sentence of Section 3.2 ("Minimum Royalty") is replaced with the following:

> Licensee shall pay to Licensor a minimum royalty for each calendar year in which some or all of such calendar year is also during the Term of this Agreement ("Minimum Royalty"). From the Effective Date of the Agreement through calendar year 2005, the Minimum Royalty shall be $25,000 per calendar year. Beginning with calendar year 2006 and continuing for the remainder of the Term, the Minimum Royalty shall be $50,000 per calendar year.

5. *Effect of Amendment.* All terms and conditions of the Agreement not amended by this Amendment remain in full force and effect.   Should there be any conflict or inconsistency between the terms and conditions contained in this Amendment and the Agreement, the terms and conditions of this Amendment shall control.

6. *Counterparts.* This Amendment may be executed in any number of counterparts, each of which shall be deemed an original and the counterparts shall together constitute one and the same instrument, binding all of the parties hereto.

2

IN WITNESS HEREOF, the parties have respectfully caused this Amendment to be executed by their duly authorized representative on the dates hereinafter indicated.

LICENSEE:

By: _____

Name: PATRICK J. HAUS

Title: PRESIDENT / COO

Date: 7/27/05

STATE OF COLORADO          §
                           §
COUNTY OF EL PASO          §

BEFORE ME, the undersigned authority, on this 27ᵗʰ day of JULY, 2005 personally appeared PATRICK J. HAUS, known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity stated, and as the act and deed of said corporation.

_____
Notary Public

My Commission Expires: My Commission Expires 08/26/06

LICENSOR:

By: _____

Name: Robert E. Rodgers, Jr.

Date: 7.28.05

STATE OF Texas            §
                          §
COUNTY OF Comal           §

BEFORE ME, the undersigned authority, on this 28 day of July, 2005, personally appeared Robert E Rodgers known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed

_____
Notary Public

My Commission Expires: June 14, 2008

CYNTHIA A. ARMSTRONG
Notary Public, State of Texas
My Commission Expires June 14, 2008

3

## SECOND AMENDMENT
## TO
## PATENT LICENSE AGREEMENT

This Second Amendment ("Amendment") is made between FreeMotion Fitness, Inc. ("Licensee"), a Utah corporation having a place of business at 1096 Elkton Drive, Suite 600, Colorado Springs, Colorado 80907, and Robert E. Rodgers, Jr. ("Licensor"), an individual that maintains an address at 974 King Point Drive, Canyon Lake, Texas 78133, and hereby amends the Patent License Agreement between Licensor and Licensee effective June 1, 2004, as amended by the First Amendment dated July 1, 2005 ("Agreement"). This Amendment is effective as of January 1, 2006 ("Amendment Effective Date").

### RECITALS:

A.   Licensor and Licensee have entered into the Agreement, under which Licensor granted Licensee a non-exclusive, royalty-bearing license under certain of Licensor's patents.

B.   Licensee desires to amend the Agreement to modify the Field of Use and certain other provisions of the Agreement.

C.   Licensor is willing to agree to such a modification, subject to all the terms and conditions of this Amendment and the Agreement.

**NOW, THEREFORE**, the parties agree as follows:

1. *Definitions.*  All capitalized terms in this Amendment have the same meaning as set forth in the Agreement, unless defined herein.

2. *Licensee Definition.*   Section 1.6 of the Agreement is replaced with the following:

> "Licensee" means FreeMotion Fitness, Inc., its parent company ICON Health & Fitness, Inc. and any wholly owned subsidiaries of ICON Health & Fitness, Inc.

3. *Field of Use.*  Section 1.7 of the Agreement is replaced with the following:

> "Field of Use" means (i) Products having a Licensee invoice price equal to or greater than two hundred fifty U.S. dollars ($250), or equivalent amounts in foreign currency, that are sold under a brand name or trademark owned by ICON Health & Fitness, Inc. or its affiliates ("Icon") or licensed by Icon from others; and (ii) Products having a Licensee invoice price equal to or greater than two hundred U.S. dollars ($200), or equivalent amounts in foreign currency, where the customer takes possession of the product in the Orient and arranges for its own shipping by a third party unaffiliated with and unrelated to Icon, and that are sold under a brand name or trademark owned by Icon or licensed by Icon from others.

4.   *Time of Payments; Royalty Reports.*  In clause (a) of Section 3.4 of the Agreement, the phrase "and serial number" is deleted.

IN WITNESS HEREOF, the parties have respectfully caused this Amendment to be executed by their duly authorized representative on the dates hereinafter indicated.

LICENSEE:

By: _____

Name: Patrick J. Hald

Title: President / COO

Date: 3/17/06

STATE OF Colorado    §
                      §
COUNTY OF El Paso   §

BEFORE ME, the undersigned authority, on this 17 day of March, 2006 personally appeared Patrick Hald, known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity stated, and as the act and deed of said corporation.

_____
Notary Public

My Commission Expires: 8/15/2007

CHRISTINE KREMPASKY
Notary Public
State of Colorado

LICENSOR:

By: _____

Name: Robert E. Rodgers, Jr.

Date: 3/31/06

STATE OF Texas     §
                      §
COUNTY OF Comal    §

BEFORE ME, the undersigned authority, on this 31ST day of March, 2006 personally appeared Robert Rodgers, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed

ANNETTE BROUSSARD
MY COMMISSION EXPIRES
August 24, 2009

_____
Notary Public

My Commission Expires: 8/24/2009

3



July 14, 2006

Patrick J. Hald
President
FreeMotion Fitness, Inc.
1096 Elkton Drive, Suite 600
Colorado Springs, Colorado 80907

Re:     Acquisition of Intellectual Property Rights and License

Dear Patrick:

Nautilus, Inc. ("Nautilus") is sending this correspondence to provide notice of its
acquisition of certain patent and other intellectual property rights which comprise the
Intellectual Property listed in Schedule A: Licensor Patents, and Schedule B: Licensor
Patent Applications to the Patent License Agreement between FreeMotion Fitness, Inc.
("FreeMotion") and Robert Rodgers, Jr. ("Rodgers"), dated June 1, 2004 (the "License"),
as well as Rodgers' rights under the License.

Nautilus would also like to clarify FreeMotion's current and future royalty reporting and
payment obligations under the License as follows:

1.  In accordance with the terms of the License, royalty reports and payment for
    all amounts due through the 2nd Quarter of 2006 should be made to Mr.
    Rodgers;
2.  All future reports and payments should be made in accordance with the terms
    of the License and sent to Heather Kell, Nautilus, Inc., 16400 SE Nautilus
    Drive, Vancouver, WA 98683.

Additionally, Nautilus is considering exercising its audit rights under the License and will
contact you in the near future to discuss scheduling in the event we decide to do so.

Should you have any questions, please do not hesitate to call my direct line, 303-545-
1485.

Sincerely,

Patrick A. Warner
Senior Vice President of Product Development

cc:     Robert Rodgers, Jr.
        Jace Jergensen
        Holden J. Bank

*Changing the Game in Health and Fitness.*

16400 SE Nautilus Drive  Vancouver, WA 98683  www.nautilus.com

# THIRD AMENDMENT TO RODGERS
# PATENT LICENSE AGREEMENT

This Third Amendment ("Amendment") is entered into by and between ICON Health & Fitness, Inc. ("ICON"), a Utah Corporation, and Nautilus, Inc. ("Nautilus"), a Washington Corporation, and hereby amends the Patent License Agreement between FreeMotion Fitness, Inc., a Utah Corporation and Robert E. Rodgers Jr., an individual, effect June 1, 2004, as amended by the First Amendment dated July 1, 2005, and the Second Amendment dated January 1, 2006 ("Agreement"). This Amendment is effective as of _____, 2007 ("Amendment Effective Date").

## RECITALS:

A.     Nautilus and ICON, or their predecessors-in-interest or subsidiaries, have entered into the Agreement, under which Nautilus's predecessor-in-interest granted ICON a non-exclusive, royalty-bearing license under certain patents now owned by Nautilus.

B.     ICON desires to amend the Agreement to modify the Field of Use and certain other provisions of the Agreement.

C.     Nautilus is willing to agree to such a modification, subject to all the terms and conditions of this Amendment and the Agreement.

**NOW, THEREFORE,** the parties agree as follows:

1. <u>Definitions</u>.  All capitalized terms in the Amendment have the same meaning as set forth in the Agreement, unless defined herein.

2. <u>Nautilus Definition</u>.  The definition of Nautilus in the Agreement is replaced with the following:

"Nautilus means Nautilus, Inc., and no other person or entity."

3. <u>Field of Use</u>.  Section 1.7 of the Agreement is replaced with the following:

"Field of Use" means (i) Products that are sold under a brand name or trademark owned by ICON Health & Fitness, Inc. or its affiliates ("Icon") or licensed by Icon from others and, also, (ii) Products where the customer takes possession of the product in the Orient and arranges for its own shipping by a third party unaffiliated with and unrelated to Icon, and that are sold under a brand name or trademark owned by Icon or licensed by

Icon from others.  It is expressly agreed that this Amendment removes all restrictions on the price at which ICON may sell licensed products in connection with this license.

4. <u>Termination</u>.  Section 4.3 of the Second Amendment to the Patent License Agreement is replaced by the following:

Nautilus may terminate this Agreement immediately if ICON repeatedly (three or more times) in any two year period, materially breaches this Agreement (the parties agree that the ICON's failure to pay Nautilus the correct amount of royalty is a material breach of this Agreement, *e.g.*, failure meaning being off from the correct amount in the order of twenty thousand dollars or more).

5. <u>Effect of Amendment</u>.  All terms and conditions of the Agreement and any previous amendments thereto not amended by this Amendment remain in full force and effect.  Should there be any conflict or inconsistency between the terms and conditions contained in this Amendment and the Agreement or a previous amendment thereto, the terms of the Amendment shall control.

6. <u>Counterparts</u>.  This Amendment may be executed in any number of counterparts, each of which shall be deemed an original and the counterparts shall together constitute one and the same instrument, binding on all of the parties hereto.


IN WITNESS HEREOF, the parties have respectfully caused this Amendment to be executed by their duly authorized representative on the dates hereinafter indicated.

ICON:

By:  _Everett Smith_

Name:  _Everett Smith_

Title:  _Secretary_

Date:  _4-26-07_


STATE of _Utah_

COUNTY of _Cache_


BEFORE ME, the undersigned authority, on this 26th day of April, 2007 personally appeared _Everett Smith_ known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity stated, and as the act and deed of said corporation.

_Narayne M. Rougeau_
Notary Public
My Commission Expires: Aug 22, 2010

Notary Public
NARAYNE M. ROUGEAU
1500 South 1000 West
Logan, Utah 84321
My Commission Expires
August 22, 2010
State of Utah

NAUTILUS

By:

Name: ~~Wayne M. DeLois~~ Gregg C. Hammann per WS 5/4/07

Title: Chairman and CEO

Date: 4/26/07

STATE of Washington

COUNTY of Clark

     BEFORE ME, the undersigned authority, on this 26 day of April, 2007 personally appeared Gregg Hammann known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity stated, and as the act and deed of said corporation.

TERESA M. FEESER
COMMISSION EXPIRES
NOTARY
PUBLIC
JUNE 15, 2008
STATE OF WASHINGTON

Notary Public

My Commission Expires: June 15, 2008

## FOURTH AMENDMENT TO RODGERS
## PATENT LICENSE AGREEMENT

This Fourth Amendment ("Amendment") is entered into by and between ICON Health & Fitness, Inc. ("ICON"), a Utah Corporation, and Nautilus, Inc. ("Nautilus"), a Washington Corporation, and hereby amends the Patent License Agreement between FreeMotion Fitness, Inc., a Utah Corporation, and Robert E. Rodgers Jr., an individual, effective June 1, 2004, as amended by the First Amendment dated July 1, 2005, the Second Amendment dated January 1, 2006, and the Third Amendment dated April 26, 2007 ("Agreement"). This Amendment is effective as of October ___, 2012 ("Amendment Effective Date").

### RECITALS

A.   Nautilus and ICON, or their predecessors-in-interest or subsidiaries, have entered into the Agreement, under which Nautilus's predecessor-in-interest granted ICON a nonexclusive, royalty-bearing license under certain patents now owned by Nautilus.

B.   Nautilus desires to amend the Agreement to increase the royalty rate for sales of products sold on or after October 1, 2012 in accordance with a settlement agreement ("Settlement Agreement") between Nautilus and ICON arising out of claims made by Nautilus under the Agreement.

C.   ICON and Nautilus agree to the increased royalty rate and the amendment regarding the royalty rate subject to all the terms and conditions of this Amendment, the Agreement, and the Settlement Agreement.

**NOW, THEREFORE,** the parties agree as follows:

1.   *Definitions*. All capitalized terms in the Amendment have the same meaning as set forth in the Agreement, unless defined herein.

2.   *Royalties*. The first sentence of Section 3.1 ("Royalties") of the Agreement is replaced with the following:

> During the Term of the Agreement, in consideration of the Patent Rights licensed to Licensee under this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, for all Products that are either made, have made, used, sold, offered for sale, or imported in the Field of Use in the Territory, Licensee shall pay Licensor a royalty of five percent (5%) of the gross sales of such Products by Licensee (the "Royalty").

> For avoidance of doubt, this Amendment cancels in all respects the "reverter" provision of Section 3.1 of the First Amendment dated July 1, 2005. As used herein, the term "reverter" provision means the following statement: "provided that if, after July 1, 2005, Licensee fails to timely send quarterly reports and payments in accordance with Section 3.4, the Royalty for all sales occurring after

such failure shall revert to six percent (6%) of the gross sales of such Products for the remainder of the Term." As a result, in no event will the Royalty ever "revert" to six percent (6%).

3. *Effect of Amendment*. All terms and conditions of the Agreement and any previous amendments thereto not amended by this Amendment remain in full force and effect. Should there be any conflict or inconsistency between the terms and conditions contained in this Amendment and the Agreement or a previous amendment thereto, the terms of the Amendment shall control.

4. *Counterparts*. This Amendment may be executed in any number of counterparts, each of which shall be deemed an original and the counterparts shall together constitute one and the same instrument, binding of all of the parties hereto.

IN WITNESS HEREOF, the parties have respectfully caused this Amendment to be executed by their duly authorized representatives on the dates hereinafter indicated.

ICON:

By: _Everett Smith_

Name: _Everett Smith_

Title: _Secretary_

Date: _28 NOV 2012_

STATE of: _Utah_

COUNTY of: _Cache_

BEFORE ME, the undersigned authority, on this _28th_ day of _November_ 2012 personally appeared _Everett Smith_, known to me to be the person and officer whose name is subscribed to the forgoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity stated, and as the act and deed of said corporation.

_Dorayne M. Rongeau_
Notary Public

My Commission Expires: _22 Aug 2014_



NAUTILUS:

By: _____

Name: Wayne M Bohi

Title: Senior Vice President

Date: 11/13/12

STATE of: WA

COUNTY of: Clark

BEFORE ME, the undersigned authority, on this 13 day of December 2012 personally appeared Wayne M Bohi, known to me to be the person and officer whose name is subscribed to the forgoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, in the capacity stated, and as the act and deed of said corporation.

_____
Notary Public

My Commission Expires: November 8, 2015

#4178374.1

# Exhibit B



VIA CERTIFIED MAIL AND E-MAIL

June 30, 2015

Jake Dutson
Assistant Controller
ICON Health & Fitness, Inc.
1500 South 1000 West
Logan, UT 84321

Re:  Rodgers License Agreement

Dear Mr. Dutson:

I represent Nautilus, Inc. ("Nautilus") regarding intellectual property matters.  I am writing regarding the Rodgers' patent license agreement between Nautilus and ICON Health & Fitness, Inc. ("ICON") dated June 1, 2004, and amended on the following dates: July 1, 2005; January 1, 2006; April 26, 2007; and September 25, 2012 ("License Agreement").

In your June 5th e-mail to Trish Howell, you informed her that all patents covered by the License Agreement expired in January 2015.  We were surprised by this assertion because the following patents, enclosed herewith, are covered by the License Agreement: CA 2,211,127 (cover sheet & claims only); CN ZL 96192690.2; EP 0 805 708 (Germany, United Kingdom, and Italy); and HK 1017282.  All of these patents expire on January 25, 2016.  Accordingly, the License Agreement expires on January 25, 2016.

Because the License Agreement expires in 2016, Nautilus expects ICON to continue paying royalties on products sold or manufactured (including manufactured on ICON's behalf) in any of the licensed territories.  Further, since ICON manufactures product in China covered by the Chinese patent and offers product in Canada and Europe covered by the Canadian and European patents, Nautilus does not understand why the Q1 2015 royalty report is limited to products sold between December 28, 2014, and January 24, 2015.

In view of the above, Nautilus requests that ICON either update the Q1 2015 royalty report to account for gross sales since January 24, 2015, or explain in detail why royalties are not being paid on products manufactured or sold since January 24, 2015.  With any updated Q1 2015 royalty report, Nautilus also expects ICON to submit payment for the difference between the royalties owed and actually paid for Q1 2015 and interest owed on the unpaid amounts.

Nautilus looks forward to receiving ICON's written reply to this letter by **July 15, 2015.**  The reply should be addressed to my attention and mailed to 17750 SE 6th Way, Vancouver, WA 98663.  I can also by contacted by phone at (360) 859-5750 or e-mail at rhoge@nautilus.com.

Sincerely,

*Rob Hoge*

Rob Hoge
Director, Intellectual Property Counsel

Enclosures (4)

# Exhibit C

**ICON**
HEALTH & FITNESS

1500 South 1000 West
Logan, UT 84321
(435) 750-5000
www.iconfitness.com

August 17, 2015

*By UPS and email*

RECEIVED

AUG 18 2015

Nautilus, Inc.
Legal Department

Rob Hoge
Director, Intellectual Property Counsel
Nautilus, Inc. World Headquarters
17750 SE 6th Way
Vancouver, WA 98683
rhoge@nautilus.com

RE: Rodgers License Agreement

Dear Mr. Hoge,

Thank you for your patience. ICON will be making the payment with interest today and send the required updated reports to Trish Howell of Nautilus. ICON will continue sending the payments and reports as required through the expiration date of January 25, 2016.

Sincerely,

Richard Chang
Associate General Counsel
ICON Health & Fitness, Inc.
1500 South 1000 West
Logan, UT 84321
435-786-5220

# Exhibit D

**ICON**

HEALTH & FITNESS

1500 South 1000 West
Logan, UT 84321
(435) 750-5000
www.iconfitness.com

August 17, 2015

*By UPS and email*

**RECEIVED**

Rob Hoge
Director, Intellectual Property Counsel
Nautilus, Inc. World Headquarters
17750 SE 6th Way
Vancouver, WA 98683
rhoge@nautilus.com

DEC 1 4 2015

Nautilus, Inc.
Legal Department

RE: Rodgers License Agreement

Dear Mr. Hoge,

Please see the attached report. It has come to ICON's attention that ICON has inadvertently included sales in the royalty reports sent in August that should not have been included. Consequently, ICON has overpaid the royalty and is applying the unpaid royalties to that overpayment.

Sincerely,

Richard Chang
Associate General Counsel
ICON Health & Fitness, Inc.
1500 South 1000 West
Logan, UT 84321

CC:     Trish Howell
        Nautilus, Inc. World Headquarters
        17750 SE 6th Way
        Vancouver, WA 98683

Exhibit E



Pillsbury Winthrop Shaw Pittman LLP
401 Congress Avenue | Suite 1700 | Austin, TX 78701 | tel 512.580.9600 | fax 512.580.9601

Conor M. Civins
512.580.9611
conor.civins@pillsburylaw.com

January 15, 2016

*Via CMRR and E-Mail*

Richard Chang
Associate General Counsel
ICON Health & Fitness, Inc.
1500 South 1000 West
Logan, UT  84321

Re: Rodgers License Agreement

Dear Mr. Chang:

I represent Nautilus, Inc. ("Nautilus") and am writing regarding the Rodgers' Patent License Agreement between Nautilus and ICON Health and Fitness, Inc. ("ICON") dated June 1, 2004, and amended on the following dates: July 1, 2005; January 1, 2006; April 26, 2007; and September 25, 2012 ("License Agreement"). Specifically, I write in response to the letter Nautilus received from you on December 14, 2015 (although the letter was misdated August 17, 2015) stating that ICON believed it had inadvertently included sales in the royalty reports sent in August 2015 and, therefore, had chosen to apply ICON's unpaid royalties to its alleged overpayment.

ICON's position that it included sales in the royalty report that should not have been included is incorrect. As Nautilus informed ICON in its letter to Jake Dutson dated June 30, 2015, the License Agreement expires in 2016 and Nautilus expects ICON to honor its agreement to continue paying royalties on products sold or manufactured (including manufactured on ICON's behalf) in any of the licensed territories. Accordingly, Nautilus expects ICON to submit payment for the difference between the royalties owed and actually paid, as well as interest owed on the unpaid amounts. Please consider this formal notice of your default to the extent such notice is required under the License Agreement. If you do not cure your default as required, Nautilus will have no choice but to pursue all available legal remedies, including by filing the attached (or similar) lawsuit in the Western District of Texas, San Antonio Division.



Richard Chang
ICON Health & Fitness, Inc.
January 15, 2016
Page 2


We trust this issue can be resolved amicably and look forward to hearing from you.

Sincerely,

Conor M. Civins
Pillsbury Winthrop Shaw Pittman
Enclosure


cc:  Jake Dutson          *(Via CMRR, E-Mail and Facsimile)*
     Assistant Controller
     ICON Health & Fitness, Inc.
     1500 South 1000 West
     Logan, UT  84321

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Nautilus, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. ___ |
| vs. | § | |
| | § | |
| ICON Health & Fitness, Inc., | § | |
| | § | |
| Defendant. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, Nautilus Inc. ("Nautilus") hereby files its Original Complaint against Defendant, ICON Health & Fitness, Inc. ("ICON"). In support thereof, Nautilus would respectfully show the Court as follows:

### DISCLOSURE STATEMENT

1.      Nautilus' Rule 7.1 Disclosure Statement is being filed concurrently with this Complaint.

### PARTIES

2.      Plaintiff, Nautilus Inc., is incorporated in the State of Washington, and has its principal place of business at 16400 SE Nautilus Way, Vancouver, Washington, 98683.

3.      Upon information and belief, Defendant, ICON Health & Fitness, Inc. is incorporated in the State of Delaware, and may be served at its principal place of business at 1500 S 1000 West, Logan, Utah, 84321.

### JURISDICTION AND VENUE

4.      This Court has original diversity jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

4825-7830-9932.v1

5.      Venue is proper in the Western District of Texas, San Antonio Division and this Court pursuant to 28 U.S.C. 1391(a) and because the contract made the basis of the suit has a forum selection clause mandating that the legal relationship between the parties "shall be governed by the laws of the state of Texas," and that "jurisdiction and venue for resolution of all disputes between the parties shall be in the courts located in Travis or Bexar County, Texas."

FACTS

6.      Nautilus and ICON are parties to a Patent License Agreement ("PLA").

7.      Nautilus and ICON are also parties to settlement agreement requiring ICON to pay certain royalties to Nautilus pursuant to the parties' PLA ("Settlement Agreement").

8.      The PLA grants ICON a non-exclusive, royalty bearing license to certain Nautilus patents.  In return for the license, ICON pays Nautilus a five percent (5%) royalty of gross sales of all products practicing Nautilus' patents.

9.      The PLA and Settlement Agreement require ICON to tender certain royalty payments to Nautilus within sixty days of the end of each fiscal quarter.

10.      The PLA also permits Nautilus to conduct audits in order to confirm the accuracy and timeliness of payments.

11.      In 2015, Nautilus reviewed ICON's royalty payments and reports and determined that ICON failed to account for all gross sales covered by the PLA and underreported certain royalties owed under the PLA and Settlement Agreement, resulting in substantial damages to Nautilus.

12.      After discussions with ICON in June 2015, ICON agreed to account for certain of the royalties owed to Nautilus. However, in December 2015, ICON reverted to refusing to pay the royalties owed, resulting in additional damages to Nautilus.

CAUSE OF ACTION: BREACH OF CONTRACT

13.      Nautilus repeats the allegations of numbered paragraphs 6 through 12 as though fully set forth herein.

14.      ICON's failure to timely and accurately report and make payments owed to

Nautilus under the PLA and Settlement Agreement is a breach of contract.

15.    Nautilus sues for its damages, plus pre-judgment and post-judgment interest as allowed by law, reasonable and necessary attorney's fees, and costs of court.

## ATTORNEY'S FEES

16.    Nautilus has retained the law firm of Pillsbury Winthrop Shaw Pittman LLP to represent it in this action, and has agreed to pay the firm reasonable and necessary attorney's fees.  Nautilus seeks an award of such fees pursuant to Section 38 of the Texas Civil Practice & Remedies Code.

## JURY DEMAND

17.    Nautilus hereby demands a trial by jury.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Nautilus Inc. requests that this Court, on final hearing, enter judgment awarding Nautilus, Inc. its actual damages from ICON Health & Fitness, Inc., along with pre-judgment and post-judgment interest allowable by law, reasonable and necessary attorney's fees, and costs of court. Nautilus, Inc. further prays that the Court grant it other and further relief, at law or in equity, to which it is justly entitled.

Respectfully submitted,

*/s/ Conor Civins*
Conor Civins
Texas Bar No. 24040693
conor.civins@pillsburylaw.com
Matthew K. Gates
Texas Bar No. 24069770
matt.gates@pillsburylaw.com
401 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone:  (512) 580-9611
Facsimile:  (512) 580-9601

ATTORNEYS FOR PLAINTIFF
NAUTILUS, INC.